UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID KUOCH, CRISSY BIRO,
and AMY GAYHEART,

    Plaintiffs,                             Case No:

v.

SELECTIVE INSURANCE COMPANY OF THE
SOUTHEAST, and UNITED STATES FEDERAL
EMERGENCY MANAGEMENT AGENCY,

    Defendants.

_____/

## COMPLAINT

Plaintiffs, DAVID KUOCH, CRISSY BIRO, and AMY GAYHEART (hereinafter "Plaintiffs"), by and through undersigned counsel, sue the Defendants, SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST and UNITED STATES FEDERAL EMERGENCY MANAGEMENT AGENCY (hereinafter "Defendants," "Selective," or "FEMA"), bringing causes of action sounding in breach of contract (Count I) and declaratory judgment action (Count II) and alleges as follows:

1. This is an action brought by Plaintiffs to enforce a property loss under a homeowner's insurance contract.

2. This is a breach of contract (Count I) and declaratory judgment (Count II) action for damages up to and exceeding $50,000.00, exclusive of interest, costs, attorney's fees, and declaratory judgment.

3. At all times material, were residents of Pinellas County, Florida, and own or have owned property insured by Selective, located at 6400 Bayou Grande Blvd NE, Saint Petersburg, FL 33702.

4. At all times material, Defendant, SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, was and is a Florida corporation, authorized to do business as an insurer of properties, and it conducts business and insures residential properties located in or around Pinellas County, Florida.

5. At all times material, Defendant, UNITED STATES FEDERAL EMERGENCY MANAGEMENT AGENCY, was and is a foreign corporation and insurance carrier authorized by the State of Florida to transact insurance and is transacting insurance in Pinellas County, Florida.

6. Venue is proper in Pinellas County, Florida pursuant to Fla. Stat, §47.011 because of the actions giving rise to this lawsuit (including the formation of the underlying contract of insurance) occurred here, the property that is subject of this lawsuit is here, and all parties hereto reside or do business in Pinellas County, Florida.

## GENERAL ALLEGATIONS

7. On or around February 2, 2024, Defendants issued and Plaintiffs purchased a policy of insurance which insured to the benefit of Plaintiff (Policy No.

FLD1857915, hereinafter the "policy"). Plaintiffs purchased a policy for a one-year period commencing on February 2, 2024, which therefore controls the rights and obligations of the parties. (see Exhibit "A").

8. On or about September 26, 2024, Plaintiffs sustained substantial damages to their property caused by sudden and accidental flood water damage and high winds related to Hurricane Helene.

9. Plaintiffs timely reported their claim on or around September 27, 2024, and Defendants acknowledged Plaintiff's claim and assigned Flood Policy No. FLD1857915.

10. On or around October 22, 2024, the Defendants sent an advancement on Coverage A in the amount of $25,000.00.

11. On or around October 22, 2024, the Defendants sent an advancement on Personal Property in the amount of $10,000.00.

12. On or around November 21, 2024, the Defendants sent an adjuster from Fountain Group Adjusters, LLC to perform an inspection and prepare a damage estimate on the insured property, and subsequently, a Proof of Loss was date signed and attached to the estimate done by Fountain Group regarding Flood Policy No. FLD1857915..

13. Also around November 21, 2024, the insured filed documents with Defendant carrier related to a supplemental claim associated with a shed on the property, and including but not limited to other underpayments associated with building damages, specifically electrical and bathroom damages.

14. The estimate attached to the November 21, 2024, Proof of Loss was dated December 31, 2024, from the Fountain Group Adjusters, LLC, totaling $114,229.75 in Building Actual Cash Value. Id.

15. On or around January 7, 2025, the Defendants sent a check for an additional $89,229.75 for Coverage A, totaling Actual Cash Value of $114,229.75.

16. On or around December 31, 2024, the adjuster from Fountain Group Adjusters, LLC edited his estimate on the insured property, totaling $114,229.75 (see Exhibit "B").

17. On or around January 7, 2025, the Defendants sent a letter to the insureds, setting forth its estimate of damages based upon its inspection and estimate, as follows: (see Exhibit "C")

> Total Claim Payment: $114,229.75 (building)
>
> $25,000.00 (contents)
>
> $139,229.75 (actual cash value)

18. The Plaintiffs retained an independent estimating company, Brown Estimating and Customer Care, (hereinafter "BECC") to inspect the subject property on or around January, 2025. The actual cash value for flood related losses totals $144,279.09 in building damages.

19. On February 19, 2025, the insured requested material information from the Defendant Selective Insurance Company to be able to evaluate the claim in dispute.

20. On March 7, 2025, Selective Insurance responded by providing some of the requested documentation.

21. Shortly thereafter, around July 30, 2025, the Plaintiffs submitted the supplemental BECC estimate to Defendants, and the documentation was forwarded to the Defendant carrier for review. However, no recognition of the supplemental was received, and the time has come to bring a suit on the money owed.

22. A copy of the Plaintiff's estimate by BECC is attached hereto. (see Exhibit "D"). After prior payments, there is approximately a nominal $15,447.85 in dispute.

23. The Defendants' estimate undervalued the cost of many repair items and overlooked many areas and items that sustained damage as a direct result of the covered loss at issue. Thus, its estimate is insufficient in both the price (i.e., cost) of repairs and the scope of repairs, creating a large shortfall. Particularly, the exterior of the building, the bathrooms, and the electrical and HVAC damages were undervalued.

24. The policy provides insurance coverage for all of the losses, damages and expenses that Plaintiff suffered and incurred with regard to the subject loss.

25. All terms and conditions of the Policy and all conditions precedent to the bringing of the instant action have been performed, waived, or excused.

26. Thus, after applying the deductible of $5,000, Selective Insurance Company paid to Plaintiffs its version of "actual cash value" owed under the policy in the sum of approximately $114,229.75 for the building.

## **COUNT I - BREACH OF CONTRACT**

Plaintiffs realleges and adopts the allegations contained in Paragraph 1-26 above and further alleges the following:

27. Plaintiffs entered into a contract with Defendants, embodied by the insurance policy referenced above. See Exhibit "A".

28. Plaintiffs suffered a direct physical loss to the insured property caused by flood on September 26, 2024, a peril covered under the Standard Flood Insurance Policy ("SFIP"). The loss resulted in covered damages to the insured building for which benefits are payable under Coverage A (Dwelling) of the SFIP.

29. Pursuant to the policy, Defendants has a contractual obligation to initially pay the insureds at least the actual cash value of the insured loss.

30. Damage caused by flood from Hurricane Helene is a covered peril under the policy, with no applicable exclusion, and Defendants has acknowledged coverage.

31. On or around October 22, 2024, Defendants issued two (2) checks to the insureds, in the amounts of $25,000.00 for the building and $10,000.00 for contents.

32. On or around January 7, 2025, Defendants issued two (2) more checks to the insureds, in the amounts of $89,229.75 for the building and $15,000.00 more for the contents, after the Defendant received notice of representation of the undersigned counsel, and Defendant issues such proceeds directly to the insureds and did not include the undersigned counsel on the proceeds despite being aware of the insured's representation on or around December 20, 2024.

33. By paying a mere $114,229.75, which is far less than actual cash value and requires the insured to advance payment for repairs and expenses, the Defendants have breached the contract of insurance and Plaintiff has incurred damages.

34. The Defendants' position is purportedly based upon its belief that having approved "a payment" to the insureds, it has complied with and performed pursuant to the policy and therefore it cannot be in breach thereof, regardless of how little it paid and whether that amount even remotely reflects the true actual cash value.

35. As a result of this breach, the Plaintiffs has had to sell the property and retain the services of the undersigned attorney to represent them and has incurred reasonable attorney fees and Plaintiff's request that reasonable attorney fee award be awarded pursuant to any as applicable law, as it becomes relevant.

## COUNT II- REQUEST FOR DECLARATORY JUDGMENT

36. Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 26 above as if fully set forth herein.

37. This Count seeks declaratory relief pursuant to 28 U.S.C. § 2201 regarding the respective rights and obligations of the parties under the Standard Flood Insurance Policy ("SFIP") issued to Plaintiff by Defendant.

38. The SFIP requires submission of a sworn proof of loss as a condition precedent to payment. However, federal courts recognize that a Write-Your-Own flood carrier may waive strict compliance with proof-of-loss formalities through conduct that is inconsistent with an intent to enforce those requirements, including by accepting a technically deficient proof of loss, adjusting the claim, and issuing payment without objection.

39. Following Hurricane Helene, the Federal Emergency Management Agency ("FEMA"), acting through the Federal Insurance Administrator, issued an official bulletin expressly waiving the SFIP sworn proof-of-loss requirement for covered flood claims arising from that event. The bulletin authorized WYO carriers to adjust and pay Hurricane Helene claims without requiring a signed or sworn proof of loss and permitted policyholders to submit claims without submitting a proof of loss. See FEMA, Nat'l Flood Ins. Program, Bulletin re: Hurricane Helene, Proof of Loss Waiver (2024).

40. The FEMA Hurricane Helene bulletin constituted an express waiver of strict compliance with the sworn proof-of-loss requirement under the SFIP for all claims arising from Hurricane Helene, including Plaintiff's claim, and carries the

full force and effect of federal law governing administration of the National Flood Insurance Program. *See* 42 U.S.C. §§ 4011, 4071; 44 C.F.R. §§ 61.4(b), 61.13(d); *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 387–88 (5th Cir. 2005).

41. Despite this waiver, or around November 21, 2024, Plaintiff submitted a date signed proof of loss for the covered flood loss in the amount of $114,229.75, and Defendant accepted it without rejection, objection, reservation of rights, or request for correction.

42. The Defendant treated the November 21, 2024 proof of loss as operative and proceeded to adjust the claim based upon that submission. However, the damages amount of $114,229.75 was in an amount calculated by the Defendant on or around, December 31, 2024, before the Proof of Loss was date signed on November 21, 2024.

43. Prior payments made by Defendant based off the damages amount of $114,229.75 in the Proof of Loss signed on November 21, 2024, were damages estimated on or around December 31, 2024.

44. Defendant, through its adjuster, prepared a revised estimate of $114,229.75 on December 31, 2024, which superseded the prior valuation of the loss and reflected the damages for the claim, and Defendant used this valuation to pay the checks to the insured.

45. Defendant thereafter issued payment based on the December 2024 revised estimate without requiring Plaintiff to submit a new or sworn proof of loss

corresponding to the revised amount and without advising Plaintiff that strict compliance with the sworn proof-of-loss requirement was being enforced.

46. By accepting an unsigned proof of loss, continuing the adjustment process, revising the estimate, and issuing payment without demanding strict compliance, Defendant acted in a manner objectively inconsistent with any intent to enforce the sworn proof-of-loss requirement.

47. Defendant's conduct and the express waivers in the FEMA Hurricane Helene bulletin constitutes a waiver, as a matter of law, of strict compliance with the sworn proof-of-loss requirement with respect to Plaintiff's claim.

48. Having waived strict enforcement of the proof-of-loss requirement to adjust and pay the emergency claim, Defendant may not later resurrect that procedural requirement to bar further adjustment or consideration of additional damages arising from the same covered flood loss.

49. On or about July 30, 2025, after receiving requests for information, Plaintiff submitted a supplemental estimate arising from the same insured property, the same flood event, the same claim number, and the same adjustment process that Defendant had previously accepted, adjusted, and paid.

50. Any attempt to reject or deny consideration of the supplemental estimate solely on the basis of the absence of a sworn proof of loss constitutes an improper effort to reinstate a procedural requirement that Defendant previously waived through its conduct.

51. An actual, present, and justiciable controversy exists between the parties regarding whether Defendant waived strict compliance with the sworn proof-of-loss requirement and whether Defendant may rely on that requirement to deny consideration of Plaintiff's supplemental damages.

52. Plaintiff seeks a declaration that:

    a. Defendant waived strict compliance with the sworn proof-of-loss requirement under the SFIP with respect to Plaintiff's claim;

    b. Defendant is barred from asserting the absence of a sworn proof of loss as a procedural basis to reject or refuse consideration of Plaintiff's July 2025 supplemental estimate; and

    c. Defendant must evaluate the supplemental estimate on its merits rather than deny it based on a procedural requirement Defendant previously disregarded.

53. Plaintiff seeks such other and further relief as the Court deems just and proper.

WHEREFORE, Plaintiffs, DAVID KUOCH, CRISSY BRO, and AMY GAYHEART, respectfully requests this Honorable Court to enter judgment against the Defendants, SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST and UNITED STATES FEDERAL EMERGENCY MANAGEMENT AGENCY, a decree in Plaintiffs' favor on the above issues, for damages for all covered losses, interest on any and all overdue payments, attorney's fees and costs, and any other remedy the court deems just and proper, in addition

to a request that the Court construe and declare the rights and responsibilities pursuant to the allegations set forth above. A demand is being made for a trial by jury on all issues so triable, as a matter of law.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 6, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**MURRAY & ASSOCIATES, P.A.**
Attorneys for Plaintiffs
Sarah M. Murray, Esq.
FBN: 1013929
By: /s/ Sarah M. Murray
1645 Palm Beach Lakes Blvd. #1210
West Palm Beach, Florida 33401
Telephone: (844) 529-7766
Primary E-Service: Sarah@myinsurancelawyer.com
Secondary E-Service: Laura@myinsurancelawyer.com